UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHANNON YOUNG and KEVIN YOUNG,<br><br>Plaintiffs,<br>v.<br>U.S. DEPARTMENT OF LABOR and<br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES,<br><br>Defendants. | Civil Action No. 17-02428 (JDB) |

**MEMORANDUM OPINION**

Shannon and Kevin Young, sons of a former Department of Energy ("DOE") contract employee, seek to set aside a Department of Labor ("DOL") decision denying them benefits under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), 42 U.S.C. § 7384 et seq. DOL denied plaintiffs' claims after finding a less-than-even chance that their father's cancer was caused by radiation exposure during his employment. Plaintiffs argue that DOL based its decision on an inaccurate radiation dose reconstruction prepared by the National Institute for Occupational Safety and Health ("NIOSH"), a component agency of the Department of Health and Human Services ("HHS"). DOL used this dose reconstruction to calculate a probability of causation ("POC") of 49.18%, just shy of the 50% required for compensation. Plaintiffs ask the Court to set aside DOL's decision, order HHS to prepare a new dose reconstruction, and order DOL to readjudicate plaintiffs' claim using the updated reconstruction. The government seeks to dismiss HHS as a party for lack of subject-matter jurisdiction pursuant

1

to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, the government's motion will be granted.[1]

## BACKGROUND

Congress passed the EEOICPA in 2000 to ensure that former DOE and DOE contract employees who "performed duties uniquely related to the nuclear weapons production and testing programs" receive "efficient, uniform, and adequate compensation for . . . radiation-related health conditions." 42 U.S.C. § 7384(a)(8). Part B of the EEOICPA provides, among other things, for a payment of $150,000 to survivors of employees who have died from cancer related to radiation exposure in the performance of their duties at DOE "covered facilities." Id. §§ 7384l(1)(B), (9), 7384n(b), 7384s(a)(1). DOL determines eligibility and adjudicates claims for EEOICPA compensation and benefits through the Office of Workers Compensation Programs ("OWCP"). See Exec. Order. No. 13,179, 65 Fed. Reg. 77,487 (December 7, 2000); 20 C.F.R. § 30.1. To be eligible for compensation for radiogenic cancer-related illness, an employee or survivor must show (1) that the employee was diagnosed with cancer; (2) that he was a DOE employee or contractor who contracted cancer after employment at a covered facility; and (3) that the cancer was "at least as likely as not" related to his employment at the covered facility, or that the POC was at least fifty percent. 20 C.F.R. §§ 30.210–.213; see 42 U.S.C. § 7384n(b).

For the third criterion, causation, OWCP relies on dose reconstructions prepared by NIOSH. 42 C.F.R. § 82.26. Dose reconstructions are "reasonable estimates of the radiation doses received by individuals . . . for whom there are inadequate records of radiation exposure." Exec. Order No. 13,179, 65 Fed. Reg. at 77,488; see 42 U.S.C. § 7384n(d)(1). NIOSH uses radiation

---

[1] Although the government asks the Court to dismiss HHS because the agency is entitled to sovereign immunity against plaintiffs' claims, the government's motion will be granted on a different ground—that plaintiffs lack standing to bring their claims against the government. Plaintiffs' complaint accordingly will be dismissed without prejudice as to all defendants for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

monitoring data from various sources to estimate the dosages of individual employees. 42 C.F.R. §§ 82.2, 82.14. Without sufficient data, NIOSH cannot prepare dose reconstructions. Id. § 82.12. OWCP uses NIOSH dose reconstructions with other information including medical evidence "to calculate an estimated [POC]." 42 C.F.R. § 82.4; 20 C.F.R. §§ 30.213(a)–(b), 30.305; see 42 U.S.C. § 7384n(d)(1). A POC greater than or equal to fifty percent satisfies the third criterion for compensation under the EEOIPCA. 20 C.F.R. § 30.213. OWCP also presumes causation for members of "Special Exposure Cohorts" ("SECs"), who "likely were exposed to radiation" but were inadequately monitored such that "it is not feasible to estimate with sufficient accuracy the dose they received." 42 U.S.C. §§ 7384(9)(A), 7384q; see 42 C.F.R. § 82.12(d) ("[A] claimant for whom a dose reconstruction cannot be completed . . . may have recourse to seek compensation under provisions of the [SEC].").[2]

After determining POC, OWCP issues a recommended decision; a claimant may object within sixty days to OWCP's Final Adjudication Branch (FAB). 20 C.F.R. § 30.310(a). FAB then issues a "Final Decision," although a claimant may request reconsideration within thirty days and the EEOICP Director can reopen the claim as a matter of discretion. Id. §§ 30.316, 30.319, 30.320.

Arnold Young, plaintiffs' father, was a DOE contract employee at Electro Metallurgical Company ("Electro Metallurgical") from 1941 to 1945 and at another facility from 1956 to 1971. Compl. [ECF No. 1] ¶¶ 4, 61; Notice of Final Decision Following a Hr'g, Ex. 1 to Compl. ("Final Decision") [ECF No. 1-6] at 1. Both were covered DOE facilities under the EEOICPA. Final Decision at 1. Young was diagnosed with prostate cancer on March 21, 1984 and died on August 5, 1985. Id. Dorothy Young, plaintiffs' mother, filed a claim for benefits under Part B of the

---

[2] To be eligible for SEC membership, a former employee must meet criteria including time and place of employment and diagnosis with a specified cancer. See 20 C.F.R. § 30.214 (listing eligibility requirements for SEC inclusion); id. § 30.5(ff) (listing eligible cancers).

3

EEOICPA as his surviving spouse. See id.; Defs.' Reply to Pl.'s Opp'n to Mot. to Dismiss ("Gov't's Reply") [ECF No. 14] at 9. Her claim was denied on April 18, 2012 because DOL, using a 2011 NIOSH dose reconstruction, determined that the POC that Young's cancer was related to his employment was "less than the 50% or greater threshold." Final Decision at 2–3 & n.1; see 2011 NIOSH Report of Dose Reconstruction Under the EEOICPA, Ex. B to Gov't's Reply [ECF No. 14-2] at 4.

In May 2012, HHS designated an SEC class at Electro Metallurgical for certain employees who worked between August 13, 1942 and December 31, 1947. See HHS Designation of Addt'l Members of the SEC under the EEOICPA, Ex. E to Gov't's Reply [ECF No. 14-5] at 2. NIOSH reviewed the effects of this change on previously-completed claims and determined that twenty-five of these claims met the criteria for SEC inclusion while thirty-nine did not. See Div. of Comp. Analysis and Supp., Program Evaluation Report: Electro Metallurgical Co., Ex. F to Def.'s Reply ("SEC Program Evaluation Report") [ECF No. 14-6] at 1–2. Because Mr. Young was not diagnosed with a covered cancer, he was not included in the SEC. See 2016 NIOSH Report of Dose Reconstruction Under the EEOICPA, Ex. H to Gov't's Reply ("2016 Dose Reconstruction") [ECF No. 14-8] at 2, 6; see also 20 C.F.R. § 30.5(ff). However, the SEC designation had affected NIOSH dose reconstructions for all Electro Metallurgical employees, including those not eligible for the SEC. NIOSH generated a new "technical basis document" to use in preparing dose reconstructions for Electro Metallurgical workers. See Div. of Comp. Analysis and Supp., Tech. Basis Doc. For the Electro Metallurgical Co., Ex. G to Def.'s Reply ("Rev. 01") [ECF No. 14-7] at 4. Because NIOSH concluded "that it is not feasible to estimate internal exposures with sufficient accuracy for all workers at the site," it eliminated the use of dose reconstruction for internal exposure. Id. at 4. At the same time, the revised technical basis document led to "an

increased external dose estimate for all claims completed using" a previous technical basis document.  SEC Program Evaluation Report at 1.

In 2014, plaintiffs filed separate claims under Part B and Part E of EEOICPA as surviving children of a covered employee.  Final Decision at 1.  On December 6, 2016, NIOSH prepared a new dose reconstruction for Young using the new technical basis document.  Compl. ¶ 67; see 2016 Dose Reconstruction.  Under the new guidelines, Young's 2016 reconstruction did not include an estimate of his internal radiation dose from August 13, 1942 to December 31, 1947 but did "increase his external dose estimate" and, as a result, his total dose estimate increased from the 2011 reconstruction.  Compl. ¶ 6 (citing 2016 Dose Reconstruction at 5).  However, even with the newly-increased total dose, OWCP calculated Young's POC at 49.18%.  Final Decision at 3; Compl. ¶ 68.  Based in part on this POC, OWCP recommended that plaintiffs' claims be denied on January 26, 2017.  Final Decision at 3.  Plaintiffs objected to the denial and the reconstruction, arguing that NIOSH had used insufficient data, and requested a hearing.  Id.  After an independent review, FAB issued a Final Decision denying plaintiffs' claims on September 12, 2017.  Id. at 1, 4–7; Compl. ¶ 14.

Plaintiffs then brought this lawsuit, asking the Court to compel DOL to readjudicate their claims after a "complete dose reconstruction" by HHS.  Compl. ¶ 105.  Plaintiffs assert that NIOSH "lacked the statutory authority" to refuse to calculate an internal dose for the period from August 13, 1942 to December 31, 1947.  Id. ¶ 7.  The government now seeks to dismiss plaintiffs' claims against HHS for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The government argues that plaintiffs have not challenged a "final agency action" as required under the Administrative Procedure Act (APA) and have thus failed to overcome HHS's sovereign immunity.  Defs.' Mot. to Dismiss [ECF No. 8] at 2; Gov't's Reply.

5

Plaintiffs contend that this Court has subject-matter jurisdiction because they are challenging HHS's decision to apply the standard for determining a SEC—"a finding that it is not 'feasible' to perform a dose estimate with 'sufficient accuracy'"—to individuals who do not qualify for SEC compensation. See Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [ECF No. 12] at 19 (quoting 42 U.S.C. § 7384q). The government's motion to dismiss is now fully briefed and ripe for decision.

## **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). On a Rule 12(b)(1) motion, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Judicial Watch, Inc. v. Nat'l Archives & Records Admin., 845 F. Supp. 2d 288, 294 (D.D.C. 2012) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1105 (D.C. Cir. 2005) (citation omitted). Likewise, "'[d]efects of standing' constitute 'defects in subject matter jurisdiction.'" Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 31 (D.D.C. 2017) (alterations and citation omitted). "The plaintiff must demonstrate standing for each claim . . . and for each form of relief that is sought." Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (citation and quotation marks omitted).

At the motion-to-dismiss stage, plaintiffs must plead facts that, taken as true, render it plausible that the Court has subject-matter jurisdiction. See Humane Soc'y of the U.S. v. Vilsack, 797 F.3d 4, 8 (D.C. Cir. 2015). The Court must take all facts alleged in the complaint as true and make all reasonable inferences in plaintiffs' favor. Id.

6

**ANALYSIS**

The government seeks dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) because, it avers, neither the EEOICPA nor the APA waives HHS's sovereign immunity. Defs.' Mot. to Dismiss at 10–11.[3] The APA waives the government's sovereign immunity for actions "seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act." 5 U.S.C. § 702. This waiver is limited to actions "made reviewable by statute and final agency action[s] for which there is no other adequate remedy in a court." Id. § 704. The government argues that Section 702 of the APA does not permit judicial review of NIOSH dose reconstructions because they are not "final agency actions" within the meaning of Section 704. Defs.' Mot. to Dismiss at 10–11.

Plaintiffs have not responded to the government's sovereign immunity argument because they maintain that they are not challenging the dose reconstruction—which they concede is not "final agency action"—but rather HHS's interpretation of the EEOICPA. See Pls.' Opp'n at 3, 19. As discussed further below, the complaint does not clearly set out that this is what plaintiffs are challenging. However, because "the review provisions of the APA are not jurisdictional," Vietnam Veterans of Am. v. Shinseki, 599 F.3d 654, 661 (D.C. Cir. 2010), but rather merely "limit[] causes of action under the APA," Ctr. for Auto Safety v. NHTSA, 452 F.3d 798, 806 (D.C. Cir. 2006), the government's argument is properly the subject of a Rule 12(b)(6) motion to dismiss for failure to state a claim rather than a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, see, e.g., Trudeau v. FTC, 456 F.3d 178, 187 (D.C. Cir. 2006).

---

[3] The parties agree that the EEOICPA's judicial review provision, 42 U.S.C. § 7385s-6, only covers DOL final actions under Part E of the EEOICPA. Compl. ¶ 16; Defs.' Mot. to Dismiss at 10.

7

But the government's motion must be granted for a different reason: regardless of whether plaintiffs have challenged a "final agency action," they have not established that they have standing to bring their claims against the government. Although the government has not argued that plaintiffs lack standing to bring their claims, "where there is doubt about a party's constitutional standing, the court must resolve it sua sponte." Harrigan v. Yang, 168 F. Supp. 3d 25, 34 (D.D.C. 2016) (citing Ege v. U.S. Dep't of Homeland Sec., 784 F.3d 791, 794 (D.C. Cir. 2015)). To properly allege standing, plaintiffs must show that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan, 504 U.S. at 560–61).

Plaintiffs' alleged injury is the adjudication of their claims using an improperly calculated radiation dose estimate. See Compl. ¶¶ 6, 13. Assuming this is a cognizable injury, plaintiffs have not established that a favorable decision by this Court would redress their harm. A plaintiff cannot meet the redressability requirement if "none of the relief sought . . . would likely remedy [the] alleged injury in fact." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109–10 (1998); see West v. Lynch, 845 F.3d 1228, 1235 (D.C. Cir. 2017) ("The key word is 'likely.'" (citation omitted)).

Plaintiffs ask the Court to "order the Secretary of [HHS] to prepare a complete dose reconstruction for Mr. Young." Id. ¶ 105. But under the applicable technical basis document, HHS (via NIOSH) has already prepared a "complete" dose reconstruction. See Rev. 01 at 4 ("[U]nmonitored internal exposures during this time period cannot be reconstructed."). Current HHS regulations acknowledge that NIOSH may be unable to calculate some doses because of inadequate information. See 42 C.F.R. § 82.12. In this instance, NIOSH "concluded that it is not

8

feasible to estimate internal radiation exposures with sufficient accuracy for all workers at [Electro Metallurgical] for the period" of Mr. Young's employment. Rev. 01 at 16; see 2016 Dose Reconstruction at 5.

Plaintiffs have not identified or asked the Court to set aside any HHS regulation that allegedly led to the denial of their benefits claims. See Compl. ¶ 105. In their opposition to the motion to dismiss, they purport to challenge "HHS's determination . . . that where it is not 'feasible' to estimate a dose with 'sufficient accuracy,' consistent with the [SEC] section of EEOICPA . . . it also cannot be 'reasonably' estimated as required under the Dose Reconstruction section of EEOICPA." Pls.' Opp'n at 3. But nothing in the complaint identifies or challenges a particular regulation or other final agency action. The complaint contests the "failure [by] . . . [HHS] to properly implement the statutes and regulations that guide the administration of the EEOICPA program," Compl. ¶ 89, but that is not a challenge to an existing regulation or final agency action. Nor does the language of plaintiffs' brief match the relief the complaint requests. See id. ¶ 105.[4]

This mismatch requires the Court to dismiss the current complaint. A plaintiff lacks standing when "none of the relief sought" in the complaint "would likely remedy [that plaintiff's] alleged injury in fact." Steel Co., 523 U.S. at 109–10. Plaintiffs have asked the Court to order HHS to "prepare a complete dose reconstruction," and to order DOL to adjudicate their claim

---

[4] In their opposition, plaintiffs quote from HHS's responses to comments during the notice-and-comment stage of its promulgation of regulations governing SECs. See Pls.' Opp'n at 12–13 (quoting Procedures for Designating Classes of Empls. as Members of the [SEC] Under the [EEOICPA] of 2000, Notice of Proposed Rulemaking, 68 Fed. Reg. 11,294, 11,302–03 (Mar. 7, 2003)); id. at 14, 20 (quoting Procedures for Designating Classes of Empls. as Members of the [SEC] Under the [EEOICPA] of 2000, Final Rule, 69 Fed. Reg. 30,764, 30,769 (May 28, 2004)). Plaintiffs claim that "[a]gency [r]esponses to public comments . . . can constitute final agency action," and purport to challenge these responses, citing American College of Emergency Physicians v. Price, 264 F. Supp. 3d 89, 94 (D.D.C. 2017). Pls.' Opp'n at 25. However, American College concerned an arbitrary-and-capricious challenge to a promulgated rule; the agency's inadequate response to comments was not final agency action itself, but rather merely evidence that the challenged rule was unlawful. Id. at 94–95.

9

"once a reasonable internal dose has been assigned to Mr. Young." Compl. ¶ 105. But without a change in the underlying technical basis document, policy, or regulations, these requested remedies would lead to precisely the same result: HHS, still applying the technical basis document, would determine that the preexisting dose reconstruction is "complete" and would recalculate the same dose, and Mr. Young's POC would still be too low for plaintiffs to receive EEOICPA benefits. See 42 C.F.R. § 81.6 (requiring DOL to use the radiation dose information provided by NIOSH). Because plaintiffs have not challenged any of the regulations or other final agency actions governing dose reconstructions, they have not established that a favorable decision by this Court granting them the relief they seek would likely lead to a different benefits decision in their case. Thus, plaintiffs have failed to carry their burden of establishing redressability.[5]

The complaint as currently crafted also suffers from a second deficiency: it does not appear to allege any causes of action. It states that the Court has jurisdiction under several statutes, Compl. ¶ 16, and notes what plaintiffs think the underlying legal concerns are, see id. ¶ 11 ("Petitioners believe that NIOSH applied the wrong statutory standard and exceeded its authority by failing to estimate Mr. Young's internal dose for this time period."). But after laying out the facts the complaint does not clearly state what legal claims plaintiffs wish to bring. See Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). Plaintiffs must state one or more causes of action clearly to "give the defendant fair notice of what the claim is and the grounds upon which

---

[5] Plaintiffs also ask for "such other and further relief as the nature of this cause may require and that this Court deems just and appropriate." Compl. ¶ 105. However, this boilerplate cannot establish redressability, particularly considering that—as noted below—plaintiffs do not set out their claims. It is difficult to grant relief if plaintiffs do not specify any legal violations to which relief could be tied, as the Court would be forced to guess—even if it might be able to guess intelligently—what the "nature of this cause" is and what relief is "require[d] and . . . just and appropriate" in light of the relevant cause(s) of action. See West, 845 F.3d at 1237 ("When conjecture is necessary, redressability is lacking.").

10

it rests." Jones v. Kirchner, 835 F.3d 74, 79 (D.C. Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  As "it is . . . obvious that the complaint fails to state a claim," the Court notes that dismissal might still be warranted under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) if plaintiffs amended their complaint merely by adding to the relief sought without including the specific causes of action under which they are suing.  Fontaine v. JPMorgan Chase Bank, N.A., 42 F. Supp. 3d 102, 109 n.3 (D.D.C. 2014).

Plaintiffs can "cure the deficienc[ies]" in their complaint, Belizan v. Hershon, 434 F.3d 579, 583 (D.C. Cir. 2006) (quoting Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996)), by both setting out their claims plainly and requesting relief that would redress their injuries.  Therefore, the government's motion will be granted without prejudice, leaving plaintiffs free to amend their complaint if they so choose.  See Fed. R. Civ. P. 15(a)(2); Brown v. Califano, 75 F.R.D. 497, 499 (D.D.C. 1977) ("Ordinarily, the remedy for noncompliance with Rule 8(a) is dismissal with leave to amend.").

## CONCLUSION

For the reasons explained above, the government's motion to dismiss will be granted, and the complaint will be dismissed without prejudice as to all defendants.  A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 16, 2018

11